UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WACKER CHEMICAL CORPORATION,

    Plaintiff,

v.                                                     Case No. 05-72207
                                                   Hon. Victoria A. Roberts

BAYER CROPSCIENCE, INC.,

    Defendant.
_____

**ORDER GRANTING IN PART, AND DENYING IN PART,
DEFENDANT'S MOTION TO DISMISS**

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Partial Motion to dismiss. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant's Motion.

**II.    BACKGROUND**

This is an action for indemnity and/or contribution for costs incurred in response to environmental contamination at a silicone production plant in Adrian, Michigan.

Defendant Bayer Cropscience, Inc., is the corporate successor to Stauffer Chemical Company ("Stauffer"), which began operating a silicone production plant in Adrian in 1965. In 1969, Plaintiff Wacker Chemical Corporation ("Wacker") and Stauffer formed a joint venture, Stauffer-Wacker Silicone Corporation ("SWS-I"), to operate the Adrian plant. However, in 1972 Wacker sold its interest in SWS-I to Stauffer. SWS-I then became a division of Stauffer.

1

In December 1974, Wacker and Stauffer again formed a joint venture to operate the Adrian plant, eventually named Stauffer-Wacker Silicone Corporation ("SWS-II"). In May 1987, Wacker purchased all of Stauffer's shares in SWS-II. Wacker continued to operate the Adrian plant, from 1987 forward.

Defendant Bayer Cropscience, Inc., became the corporate successor to Stauffer.

Operation of the Adrian plant resulted in environmental contamination. It is unclear when the contamination was first discovered.

According to Plaintiff, the contamination occurred because Stauffer disposed of hazardous byproducts of silicone production by spreading it on the ground and dumping it into an unlined lagoon on the site. Additionally, Plaintiff claims Stauffer cleaned spilled silicone oil with chlorinated solvents that were hosed outside onto the soil or into the lagoon.

Following a site inspection by the Michigan Department of Environmental Quality ("MDEQ"), Plaintiff investigated the environmental contamination and began remediation. On March 25, 2005, Plaintiff entered into a consent agreement with the state of Michigan. The consent agreement required Plaintiff to investigate further and remediate the environmental contamination.

On May 3, 2005, Plaintiff filed a Complaint in Lenawee County Circuit Court. Defendant removed on June 3, 2005. Plaintiff filed an Amended Complaint on December 1, 2005. Plaintiff alleges violations of: (1) Part 17 of NREPA[1]; (2) Part 201 of NREPA, Section 20126a; and, (3) Part 201 of NREPA, Section 20129. Plaintiff also

---

[1]"NREPA" is an acronym for the Natural Resources and Environmental Protection Act, MCL 324.1701 *et seq.*

seeks: (4) Contribution under MCL 600.2925a and (5) common-law indemnity.

Defendant filed a Partial Motion to dismiss on January 6, 2006. It seeks dismissal of all Counts, except a portion of Count III.

### III. STANDARD OF REVIEW

"Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citation omitted). The court must construe the complaint in a light most favorable to the plaintiff, and accept all of his factual allegations as true. *Id.* When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Id.*

### IV. APPLICABLE LAW AND ANALYSIS

#### A. Count I - Part 17 of NREPA

Plaintiff seeks a declaratory judgment and injunctive relief ordering Defendant to remediate, and/or reimburse Plaintiff for the remediation, of the contamination at the Adrian site. Plaintiff relies on Part 17 of the NREPA. In pertinent part, it provides:

> (1) The attorney general or any person may maintain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction.

MCL 324.1701(1)

> (1) The court may grant temporary and permanent equitable relief or may impose conditions on the defendant that are required to protect the air, water, and other natural resources or the public trust in these resources from pollution, impairment, or destruction.

MCL 324.1704(1).

Defendant claims Plaintiff fails to state a claim under Part 17 because it does not provide for reimbursement costs, and the relief sought by Plaintiff is not "required" to protect the environment as contemplated by the statute because Plaintiff is already obligated by the consent agreement to remediate the pollution.

It is clear from Michigan case law that Part 17 was not designed to address remediation. "[C]laims under Part 17 may not be brought where the underlying controversy is over a 'response activity' as defined in [P]art 201." *Genesco, Inc. v. Michigan Department of Environmental Quality*, 250 Mich.App. 45, 53 (Mich.App. 2002). "Response activity" is defined as "evaluation, interim response activity, *remedial action*, demolition, or the taking of other actions necessary to protect the public health, safety or welfare, or the environment or the natural resources..." MCL §324.20101(ee)(emphasis added).

*Genesco* prohibits Plaintiff's claim under Part 17. The underlying controversy is who should fund a response activity. As the court explained, "[b]oth [Part 17 and Part 201] have a common goal of protecting the environment...[h]owever, the approach of [P]art 17 is to preserve the environment through the obtaining of declaratory and injunctive relief in court, while [P]art 201 encourages the prompt cleanup of hazardous substances through administrative or private action and assignment of financial liability." *Genesco*, 250 Mich.App. at 49 (citing *Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich.App. 1, 4-7 (Mich.App. 1999)). The court also stated that Part 17 provides a "direct method for enforcing environmental regulations and challenging an administrative agency's decision without exhausting administrative remedies." *Id.* at 50. On the other hand, Part 201 creates "a private cause of action to establish liability for

4

costs of investigation and remediation of contaminated sites." *Id.*

Indisputably, Plaintiff's claim that Defendant should be ordered to either reimburse it for remediation of the Adrian site, or fund the remediation itself, is not the relief contemplated by Part 17. Accordingly, Plaintiff fails to state a claim upon which relief can be granted under Part 17. Count I is dismissed.

### B.    Count II - Part 201 of NREPA, Section 20126a

Plaintiff seeks: (1) reimbursement for costs and expenses of response activities already conducted; (2) future response activity costs; and (3) costs and attorney fees, pursuant to MCL §324.20126a:

> (1) Except as provided in section 20126(2), a person who is liable under section 20126 is jointly and severally liable for all of the following:
> (b) Any other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgated under this part.

Defendants only basis for arguing that Plaintiff's claim under 20126a should be dismissed is that Plaintiff is a "potentially responsible party" ("PRP"). Defendant maintains that PRP's are limited to actions for contribution. Plaintiff does not concede that it is a PRP. [Response, p.9, n.1]. Defendant admits that the consent agreement indicates that it is for "settlement purposes only and does not constitute an admission by Plaintiff that any law has been violated." [Motion, p.12].

Contrary to Defendant's assertions, on a motion to dismiss, the Court cannot infer that Plaintiff is a PRP because it entered into the consent agreement. Any inferences must be drawn in favor of Plaintiff. See *Bloch, supra*. The consent agreement expressly states that Plaintiff does not admit that any law was violated. Further, Plaintiff does not admit any legal conclusion or factual allegation stated or

implied in the consent agreement. [Amended Complaint, Exhibit C, ¶2.7].  Thus, the Court cannot rely on statements in the consent agreement to find Plaintiff is a PRP.

Defendant also contends that Plaintiff is a PRP because Plaintiff solely operated the Adrian site since 1987, and Plaintiff was part of a joint venture that operated the Adrian site for 16 years between 1965 and 1987. [Motion, p. 13].

Plaintiff contends Defendant is the responsible party under MCL §324.20126, which provides in pertinent part:

> (1) Notwithstanding any other provision or rule of law and except as provided in subsections (2), (3), (4), and (5) and section 20128, the following persons are liable under this part:
>
> (a) The owner or operator of a facility if the owner or operator is responsible for an activity causing a release or threat of release.
>
> (b) The owner or operator of a facility at the time of disposal of a hazardous substance if the owner or operator is responsible for an activity causing a release or threat of release.

Plaintiff's Complaint alleges that Defendant was solely responsible for waste management and the resultant contamination.  Plaintiff alleges that Defendant created the lagoon where hazardous material was dumped in 1968, before Plaintiff was involved. [Amended Complaint, ¶ 12].  Even after the 1974 agreement which gave Plaintiff a 49% interest in SWS-II, Plaintiff claims Defendant remained in direct control of the silicone production process and waste disposal practices at the Adrian site.  *Id.* at ¶30.  Further, Defendant purportedly instituted a plan to terminate the unsafe manner in which waste was handled in 1979, before Plaintiff became the sole owner in 1987.  *Id.* at ¶¶31-33.

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of

action as stated in the complaint, **not a challenge to the plaintiff's factual allegations**." *Golden v. City of Columbus*, 404 F.3d 950, 958-959 (6th Cir. 2005)(emphasis added). The Court can only dismiss a claim "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. at 959. Based on the language of 20126 and 20126a, this Court cannot say today, that Plaintiff can prove no facts entitling it to relief. At another time, Defendant can challenge Plaintiff's ability to support its allegations in a motion for summary judgment.

The Court will, however, dismiss Plaintiff's claim for attorney fees. Section 20126a does not provide for them.[2] Michigan adheres to the rule that attorney fees are not available unless explicitly provided for by statute, court rule, or common-law exception. *Nemeth v. Abonmarche Development, Inc.*, 457 Mich. 16, 37-38 (1998).

### C.   Count III - Part 201 of NREPA, Section 20129

Plaintiff seeks: (1) reimbursement for costs and expenses of response activities already conducted; (2) future response activity costs; and (3) costs and attorney fees, pursuant to MCL §324.20129, which provides:

> (3) A person may seek contribution from any other person who is liable under section 20126 during or following a civil action brought under this part. This subsection does not diminish the right of a person to bring an action for contribution in the absence of a civil action by the state under this part. In a contribution action brought under this part, the court shall consider all of the following factors in allocating response activity costs and damages among liable persons:
> ...

---

[2]For the same reason, Plaintiff's claim for attorney fees under MCL §324.20129, MCL §600.2925a, and common-law indemnity will be dismissed.

7

(8) A person who has resolved his or her liability to the state for some or all of a response activity in an administrative or judicially approved consent order may seek contribution from any person who is not a party to the consent order described in subsection (5).

### 1.     MCL §324.20129(3)

Defendant argues Plaintiff failed to state a claim because it did not allege that Plaintiff has been sued under Part 201.  Defendant relies on *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004).  In *Cooper*, the Court held that under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), a private party may not bring an action for contribution unless it was sued under certain sections specified in the statute.  The language the Court interpreted was substantially similar to the language of MCL §324.20129(3).

Plaintiff contends that the second sentence of section 324.20129(3), "[t]his subsection does not diminish the right of a person to bring an action for contribution in the absence of a civil action by the state under this part," allows it to seek contribution even though it has not been sued on related claims.

The Court finds the analysis in *Cooper* helpful to a resolution of the issue here. MCL §324.20129(3) does not allow a person to bring an action for contribution unless suit was brought against that person under Part 201.  "When the legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted."  *State Farm Fire and Casualty Co. v. Old Republic Ins. Co.*, 466 Mich. 142, 146 (2002).  "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."  *Id.*

The statute is not ambiguous. The first sentence requires that a person seeking contribution may only do so during or following litigation under Part 201. The second section clarifies that the suit referenced in the first sentence need not have been brought by the state: it could have been brought by a private party. To accept the interpretation advanced by Plaintiff would render several parts of 324.20129 surplusage. It makes no sense that the legislature would state that an action for contribution may be brought "during or following a civil action brought under this part," and then in the next sentence say a claim for contribution can be brought in the absence of civil action.

Accordingly, that part of Count III that purports to state claim under MCL §324.20129(3) is dismissed.

    **2.**    **MCL §324.20129(8)**

Defendant argues Plaintiff failed to state a claim for contribution for costs incurred before entry into the consent agreement because MCL §324.20129(8) does not provide such relief. It asserts that 20129(8) only authorizes an action for contribution for response activity costs incurred as a result of compliance with the consent agreement. Specifically, Defendant alleges that Plaintiff cannot seek contribution for costs incurred prior to March 25, 2005, the date it signed the consent agreement.

Plaintiff maintains that the language of 20129(8) does not limit recovery as Defendant suggests. It claims that the purpose of Part 201 is to encourage prompt remediation of environmental contamination, and precluding contribution for costs incurred prior to entry into a consent agreement would not support this purpose.

The Court finds the language of the statute to be unambiguous. There is no restriction on *when* the response activity must take place - the only restriction is that

there can only be an action for contribution for "*a response activity in an administrative or judicially approved consent order.*"  The unambiguous language of the statute encourages the prompt undertaking of response activities, but precludes liability in an action for contribution for activities beyond the scope of what is contemplated by the consent order.  Put another way, contribution may only be had for response activities in a consent order.  The date that the actual document is signed is irrelevant.  Plaintiff's claim under MCL §324.20129(8) can go forward.

### D.   Count IV - Contribution Under MCL §600.2925a

Defendant asserts that Plaintiff failed to state a claim for contribution pursuant to §600.2925a because it did not state specific allegations to support two elements.

The elements of a claim for contribution based on a settlement are:

(1) There must be joint liability on the part of the plaintiff and defendant;
(2) The plaintiff must have paid more than its pro rata share of the common liability;
(3) The settlement entered into by the plaintiff must extinguish the liability of the defendant;
(4) A reasonable effort must have been made to notify the defendant of the pendency of the settlement negotiations;
(5) The defendant must be given a reasonable opportunity to participate in settlement negotiations; and,
(6) The settlement must be made in good faith.

*Reurink Brothers Star Silo, Inc. v. Clinton County Road Commissioners*, 161 Mich.App. 67, 72-73 (Mich.App. 1987).

Plaintiff concedes it did not explicitly state elements (3) and (6).  However, Plaintiff asks the Court to draw all reasonable inferences from its factual allegations in its favor.

Unlike the Michigan court rules, federal courts employ "notice pleading."

Fed.R.Civ.P. 8. "Rule 8(a) sets forth the basic federal pleading requirement that a pleading 'shall contain a short and plain statement of the claim showing that the pleader is entitled to relief.' The familiar standard for reviewing dismissals under Rule 12(b)(6) is that the factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Id.* at 437 (citation omitted).

Based on the allegations in the Amended Complaint and the terms of the consent agreement attached as Exhibit C to the Complaint, the Court infers that Plaintiff entered the consent agreement in good faith. Defendant's liability to the state is extinguished by the consent agreement because Plaintiff voluntarily entered the consent agreement which requires it to remediate known and newly identified contamination. Further, as the Defendant itself recognized, Plaintiff's entry into the consent agreement with the state "settled claims the State has against Plaintiff with respect to the Adrian Site." [Motion, p. 18].

### E.   Count V - Common Law Indemnity

Defendant seeks dismissal of Plaintiff's claim for common law indemnity because it asserts that Plaintiff is a responsible party for the contamination at the Adrian site.

"An action for common-law indemnity lies only where a claimant alleges and proves that he is without personal fault, that he is not the party best suited to insure

11

preventative measures and that his negligence, if any, was only passive negligence. Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own." *Cutter v. Massey-Ferguson, Inc.*, 114 Mich.App. 28, 33 (Mich.App. 1982).

As discussed above, Plaintiff pleads that it is not responsible for the contamination and did not control waste management. This is sufficient to state a claim for common-law indemnity. Count V will not be dismissed.

**F.    Count VI - Unjust Enrichment/Quantum Meruit**

Lastly, Defendant contends Plaintiff cannot maintain an action for unjust enrichment because the consent agreement obligates Plaintiff to remediate the contamination.

The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and, (2) it would be inequitable for the defendant to retain the benefit. *Dumas v. Auto Club Ins. Assoc.*, 437 Mich. 521, 546 (1991). Where these elements are established, the law operates to imply a contract. *Barber v. SMH, Inc.*, 202 Mich.App. 366, 375 (Mich.App. 1993).

Here, Plaintiff does not allege a benefit conferred on Defendant. Defendant was not under any obligation to remediate the contamination. Defendant had no enforceable duty to share in the costs; was not a part of the consent agreement; and only Plaintiff had a duty to remediate the contamination. See *Chem-Nuclear Systems, Inc. v. Arivec Cemicals, Inc.*, 978 F.Supp. 1105, 1110 (N.D. Ga. 1997)("[W]hen a PRP is under a legal duty to remediate a contaminated site, this remediation does not unjustly enrich other PRPs."); and *Nielsen v. Sioux Tools, Inc.*, 870 F.Supp. 435, 443 (D.Conn.

1994)("[W]here the plaintiff has a legal duty to clean up waste on a contaminated site, recovery based upon unjust enrichment is foreclosed.").

Therefore, Count VI is dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant's Partial Motion to dismiss. The following claims remain:

(1)   Count II - MCL §324.20126a, but not attorney fees;

(2)   Count III - MCL §324.20129(8), but not attorney fees;

(3)   Count IV - MCL §600.2925a, but not attorney fees; and,

(4)   Count V - common-law indemnity.

**IT IS SO ORDERED.**

**S/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  August 18, 2006**

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 18, 2006.**

**S/Carol A. Pinegar**
**Deputy Clerk**