UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WACKER CHEMICAL CORPORATION

    Plaintiff,

vs.                                                    Case No: 05-72207
                                                       Honorable Victoria A. Roberts

BAYER CROPSCIENCE INC.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV AND V OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM**

**I. INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment on its Counterclaim and Defendant's Motion for Summary Judgment on Counts IV and V of Plaintiff's First Amended Complaint.

For the following reasons, Defendant's Motion regarding its Counterclaim is **DENIED** and Defendant's Motion for Summary Judgment on Counts IV and V is **GRANTED**.

**II. BACKGROUND**

The controversy is a dispute over liability for the cleanup costs of environmental contamination at an industrial facility located at 3301 Sutton Road in Adrian, Michigan ("Adrian Site"). This facility began manufacturing silicone around 1965. One of the two

1

or both parties owned and/or operated the Adrian Site since 1965.  The parties stipulated Defendant owned and operated it from 1965 until February 1969.

Ownership from February 1969 to May 1987 is disputed.  However, what is not in dispute is that after a period of some ownership or operation by one of the two or both parties between February 1969 and May 1987, Plaintiff became the sole owner and operator in 1987 when it bought all of Defendant's shares in the Adrian Site. *See id.*

Pursuant to a 2005 agreement with the Michigan Department of Environmental Quality ("DEQ"), Plaintiff signed a Corrective Action Consent Order requiring it to remediate past and future contamination and engage in additional environmental safety activities.  Plaintiff seeks declaratory and injunctive relief, and recovery of environmental response costs incurred at the Adrian Site.  Defendant's Counterclaim alleges Plaintiff is contractually obligated to indemnify it for all related damages because of the indemnification provision in their 1987 sales agreement.

Defendant's Counterclaim raises the following issues: (1) is the Plaintiff the same party in interest that entered into the 1987 indemnification agreement; (2) does the indemnification agreement apply to actions between the parties to the agreement; (3) is the contract for indemnification between Plaintiff and Defendant otherwise applicable under these facts; (4) is the course of performance of the parties relevant in light of the agreement; and (5) is the Defendant directly liable as an owner or operator of the Adrian Site.

The issues presented by Defendant's Motion for Summary Judgment on Count IV for statutory contribution are: (1) whether the-law-of-the-case doctrine precludes the Court's consideration of the Motion; and (2) whether the consent decree entered into by

Plaintiff precludes application of MCL § 600.2925a because it is does not extinguish Defendant's liability. Defendant's Motion for Summary Judgment on Count V, alleging common law indemnity raises questions concerning: (1) the-law-of-the-case doctrine; (2) Plaintiff's active negligence in creating the environmental contamination; (3) Plaintiff's settlement of the claim through a consent order and whether it precludes relief against Defendant; and (4) whether Plaintiff's failure to argue its own liability precludes relief.

### III. STANDARD OF REVIEW

On a motion for summary judgment, the moving party bears the burden of demonstrating the absence of all genuine issues of material fact. *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Sagan v. U.S.*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue*." Morrison v. Relational, LLC*, No. 05-60025, 2007 U.S. Dist. LEXIS 10063, at *16 (E.D. Mich. Feb. 14, 2007). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50. The court "may not make credibility determinations or weigh the evidence*." Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir. 1994) (citing *Liberty Lobby,* 477 U.S. at 255). The mere existence of a scintilla of evidence in support of the nonmovant is not sufficient, and it must submit sufficient evidence upon which a jury could reasonably find for it. *Liberty Lobby,* 477 U.S. at 252.

### IV. APPLICABLE LAW

New York law governs construction of the 1987 indemnity agreement and Defendant's Counterclaim; Michigan law governs Plaintiff's claims against Defendant.

### V. ANALYSIS

**A) Counterclaim**

   i)   <u>Third-Party Requirement</u>

Defendant argues it is entitled to summary judgment on its Counterclaim because Plaintiff must indemnify it for all the environmental contamination costs related to this suit. But, Plaintiff says the indemnification agreement applies only to claims brought by third-parties, and not to litigation between the original parties to the contract.

The Court agrees with Plaintiff. The indemnification provision states:

> [Plaintiff] hereby agrees to indemnify [Defendant] and its Affiliates, and their officers, directors and employees from, against and with respect to Damages arising out of or in any manner incident, relating or attributable to . . . polluting air, water or soil in violation of any Federal, State or local statute from March, 1969 to [May 1987].

May 15, 1987 Agreement § 12.3(a).

Under New York law, when a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed. *Hooper v. AGS Computers Inc.*, 74 N.Y.2d 487, 491 (N.Y. 1989) (citing *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 211 (N.Y. 1971); *Kurek v. Port Chestern Hous. Auth.*, 18 N.Y.2d 450, 456 (N.Y. 1966)). Without an "unequivocal" indication in an indemnification agreement that its provisions extend further than actions brought by third-parties, the contract's indemnification does not apply to suits brought by the parties to the contract. *See Hooper*, 74 N.Y.2d at 492-94; *Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1175-77 (S.D.N.Y. 1996); *Sequa Corp. v. Gelmin*, 851 F. Supp. 106, 110 (S.D.N.Y. 1994) (citing *Bourne Co. v. MPL Commc'n, Inc.*, 751 F. Supp. 55, 57-58 (S.D.N.Y. 1990)).

In *Hooper v. AGS Computers Inc.,* the New York Court of Appeals found an indemnification agreement did not apply to attorney fees in a suit between the parties to the agreement. *See Hooper*, 74 N.Y.2d at 491. *Hooper* reasoned:

> The clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, [the clause] is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. It obligates defendant to 'indemnify and hold harmless [plaintiff] * * * from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees' arising out of breach of warranty claims, the performance of any service to be performed, the installation, operation and maintenance of the computer system, infringement of patents, copyrights or trademarks and the like. All

5

> these subjects are susceptible to third-party claims for failures in the installation or operation of the system.

*Id.* at 492. For the indemnity agreement to apply to actions brought by those other than third-parties, *Hooper* requires an unmistakable and *unequivocal* indication. So long as the possibility exists for third-party actions to be brought concerning air, water, or soil pollution, the indemnification agreement cannot be invoked in an action between this Plaintiff and this Defendant.

*Hooper* also found persuasive that "other provisions in the contract [unmistakably] relate[d] to third-party claims." *Id.* The contract in *Hooper*, like this indemnification agreement, required "plaintiff to 'promptly notify' defendant of 'any claim or litigation to which the indemnity . . . shall apply' and it further provide[d] that defendant 'may assume the defense of any such claim or litigation with counsel satisfactory to [plaintiff].'" *Id.; see also* May 15, 1987 Agr. § 12.3(b). *Hooper* found these notice and defense provisions did not support an *unequivocal* indication that the indemnification was broader than claims brought by third-parties. The Court reasoned:

> To extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in the breach of contract action against defendant would render these provisions meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties.

*Id.* at 493. The notice and defense provisions of the indemnity agreement mirror those in *Hooper*, and strongly suggest it applies only to claims *brought* by third-parties.

Defendant argues the broad language of the contract describing the type of claims covered by the agreement evidences an intention to include more than third-party claims. The court rejected this precise argument in *Sequa Corp. v. Gelmin* when it

6

held that only if one of the claims covered in an indemnification agreement refer "exclusively" or "unequivocally" to claims between the parties, may a court interpret an indemnification agreement to include such claims. *Sequa Corp*, 851 F. Supp. at 110-11(citing *Bourne*, 751 F. Supp. at 57-58); *see also Bourne*, 751 F. Supp. at 57 (quoting *Hooper*, 74 N.Y.2d at 490 n.1) ("Plaintiff argues that the language in the Agreement which refers to breach of covenants, warranties or representations in the contract can only refer to claims between the parties, and thus supports the inference that the Agreement contemplated the reimbursement of attorneys' fees in litigation between the parties to the Agreement. The Court does not agree. Indeed, the language in the *Hooper* contract also provided for indemnification for 'any breach by [defendant] of any express or implied warranty hereunder and any express representation or provision hereof.'").

The Court holds the indemnity provision of the 1987 agreement applies only to suits brought by third-parties.

ii) <u>Third-Party Status of Plaintiff</u>

Defendant alternatively argues that assuming a third-party action is the only type for which it can be indemnified, Plaintiff is a third-party to the indemnification agreement, the indemnification obligation applies, and Plaintiff cannot sue Defendant. Defendant grounds its argument in the distinction between "Old Wacker" and "New Wacker." Plaintiff notes it "is technically . . . not the same corporation (even though it has the same name – Wacker Chemical Corporation – and is from the same corporate family of companies) as the Wacker Chemical Corporation that was a party to the 1987 [indemnification] Agreement at issue." Plaintiff's Response to Defendant's Counterclaim

7

at 5. The parties entered into an Agreement Permitting Assignment transferring the rights and obligations of the original Wacker corporate entity ("Old Wacker") to Plaintiff, the current Wacker corporate entity ("New Wacker"). *Id.*

Defendant argues Plaintiff accepted the rights and obligations of Old Wacker, and, accordingly, it is obliged to indemnify Defendant from claims arising from the Adrian Site because of the 1987 agreement of Old Wacker. In Defendant's words, "[b]ecause Old Wacker has assigned the rights and obligations under the 1987 Agreement to New Wacker, New Wacker stands in the shoes of Old Wacker and is now responsible for Old Wacker's indemnity obligation." Defendant's Reply Brief in Support of its Counterclaim at 2.

However, just as Plaintiff was assigned Old Wacker's obligations it was also assigned its rights. Because Plaintiff stands in the shoes of Old Wacker as to the 1987 agreement with Defendant, it is a party to the agreement and not a third-party. Upon assignment, "Old Wacker" became Plaintiff. *See also James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 61 N.Y.2d 836, 838 (N.Y. 1984) ("all rights that plaintiff had 'in or growing in any manner out of' its contract with LPOG were fully assigned . . . . Consequently, plaintiff is no longer the real party in interest with respect to claims . . . by virtue of this assignment."). Indeed, just as the obligation of indemnification was assigned, so was the right not to have the agreement apply to suits brought by the parties to the agreement.

Defendant argues that because the assignment agreement states "it does not create a third-party defense to Defendant's Counterclaim," the Plaintiff cannot rely on its status as a party to the agreement as a means to defeat the claim. Agreement

8

Permitting Assignment § (2), Plaintiff's Exhibit #12 (Court Doc. #67) (emphasis added). This reasoning is without merit.

Defendant distorts the requirement that an entity bound to an agreement be a party to that agreement, and construes the assignment as creating a "new defense." The assignment agreement also states it will not "preclude any party, their successors and assigns, from raising any defenses against claims . . . ." *Id.* § (3). To the extent the actual status of the parties was a pre-existing "defense" to the claim, it is now encompassed within the assignment of Old Wacker's rights and obligations to Plaintiff.

Defendant strenuously emphasizes the importance of the fact that Plaintiff only asserts "claims . . . first asserted against them by another party for which they sought recovery . . . ." Defendant's Reply Brief at 3. However, Defendant cites to no case law supporting this argument.

Pointedly, Defendant argues the "crucial distinguishing fact in this case" is that "this is not a case between the indemnitor and indemnitee under the 1987 Agreement." *Id.* If Defendant is correct, its Counterclaim would clearly fail without further consideration since Plaintiff would have no obligation to indemnify it. *See Olympic Games,* 61 N.Y.2d at 838.

Plaintiff is not a third-party to this indemnity agreement.

### iii) <u>Course of Performance</u>

Defendant alternatively argues that notwithstanding the terms of the agreement, the parties' subsequent course of conduct makes clear that Plaintiff must indemnify it and this suit cannot go forward.

In some instances, the course of performance can evidence intent of the parties to a contract, even when the contract is not ambiguous. *See United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 640 (S.D.N.Y. 1999) ("the parties' course of performance of a contract is relevant to understanding the contract even if the contract is unambiguous."); *CBS,* 606 N.Y.S.2d at 674 ("there is no ambiguity in the escalation clause of the parties' original lease. Moreover, viewing plaintiff's consistent payment for close to a decade . . . it is clear the parties' practical construction comports with the plain meaning of the escalation clause.").

However, New York law does not support the contention that "conduct could outweigh a clear, contradictory contract provision" or "can be used to contradict the otherwise clear import of the contract language." *EJ Footwear, LLC v. Excellus Health Plan, Inc.*, No. 05-0504, 2006 U.S. Dist. LEXIS 55491, at *21-22 (M.D. Tenn. Aug. 08, 2006) (construing New York law). In addition, the majority of cases holding the course of performance is relevant even without ambiguity concern the specialized context of reinsurance actions. *See id.* at 21 (citing *Sumitomo Marine & Fire Ins. Co. v. Cologne Reinsurance Co.*, 552 N.E.2d 139, 142 (N.Y. 1990)) ("Many of the cases analyzing the parties' course of conduct appear to be reinsurance actions, which present particular issues of contract construction, due to the 'swift, seemingly almost casual process of contract formation' unique to the reinsurance industry.").

The agreement's intention to extend the indemnity provision to claims other than those brought by third-parties is not *unequivocal*. Despite this shortcoming, it is arguable the contract is ambiguous on this point. Nonetheless, the course of

performance is only relevant to demonstrate the intention of the parties on indemnification for suits brought by the parties to the agreement.

As a result, most of Defendant's course of performance arguments are irrelevant. Defendant makes several points about the history of payments between the parties in relation to the Adrian Site. While each side argues the other owned and/or operated the site, it is not disputed that Plaintiff and Defendant were in a joint venture for a period of time up until the 1987 Agreement. Thus, it is not particularly surprising or helpful to note that Plaintiff paid some of the costs associated with the site. The only relevant inquiry is whether the course of performance indicates the indemnification agreement's scope includes more than *claims brought by third-parties*. Defendant does not offer any example of a course of performance demonstrating an intention for the indemnification agreement to apply to claims brought by the parties to the agreement, or for that matter, any "unequivocal" indication. Thus, course of performance analysis does not alter the Court's finding that the indemnity agreement applies only to actions brought by third-parties.

    iv)    <u>Ownership and Control</u>

The Court will not address Plaintiff's ownership and control argument since Defendant's Counterclaim is foreclosed.

**B.**    **Counts IV and V**

Under Michigan law, Plaintiff claims statutory contribution in Count IV and common law indemnity in Count V of its First Amended Complaint. Because the Court already denied Defendant's Motion to Dismiss Counts IV and V based on similar

11

arguments, Plaintiff argues the law-of-the-case doctrine prohibits consideration of the same arguments again. However, a holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment when discovery supplements the complaint. *See McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) ("our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery.") *cf. Wilcox v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) (holding a trial court's denial of a preliminary injunction did not establish the law of the case with respect to the district court's subsequent summary judgment determination).

In addition, the "law-of-the-case doctrine is discretionary when applied to . . . the same court's own decisions." *Bowles v. Russell*, 432 F.3d 668, 677 (6th Cir. 2005) (quoting *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990))).

The Court addresses Defendant's arguments on Counts IV and V.

A) <u>Count IV: Statutory Contribution</u>

A claim for statutory contribution made by a tortfeasor when that tortfeasor entered into a settlement with a claimant must proceed under MCL § 600.2925a(3):

> (3) A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor if any of the following circumstances exist:
>
> (a) *The liability of the contributee* [Defendant in this case] *for the injury or wrongful death is not extinguished by the settlement.*
>
> (b) A reasonable effort was not made to notify the contributee of the pendency of the settlement negotiations.
>
> (c) The contributee was not given a reasonable opportunity to

> participate in the settlement negotiations.
>
> (d) The settlement was not made in good faith.

*Reurink Bros. Star Silo, Inc. v. Clinton County Rd. Comm'rs*, 409 N.W.2d 725, 727 (Mich. Ct. App. 1987) (emphasis added) (quoting MCL § 600.2925a(3)).

Discovery revealed portions of the consent order which demonstrate Defendant is entitled to judgment as a matter of law on Plaintiff's statutory contribution claim. The consent order makes clear Defendant's liability is not extinguished:

> *Nothing in this Consent Order shall constitute or be construed as a release from any claim, cause of action, or demand in law or equity* against any person, firm, partnership or corporation *who is not a party to this Consent Order* for any liability it may have arising out of, or relating in any way to, the generation, storage, treatment, handling, transportation, release, or disposal of any contaminants found at, taken to, or taken from the Facility.

Corrective Action Consent Order § 19.1, Defendant's Exhibit 66 (Court Doc. #57) (emphasis added). Section 2.7 provides:

> [Plaintiff] expressly reserves all rights it may have in law or equity to maintain or defend against any claim brought by or against any person.

*Id.* § 2.7. Section 18.2 provides:

> [The DEQ] expressly reserves all rights and defenses that it may have, including the right both to disapprove of work performed by [Plaintiff] pursuant to this Consent Order and to request that [Plaintiff] perform tasks in addition to those stated in the Consent Order. [Plaintiff] expressly reserves all rights and defenses with respect to any such action by the DEQ.

*Id.* § 18.2. Section 18.3 provides:

> [The DEQ] reserves all of its statutory and regulatory powers, authorities, rights, and remedies, both legal and equitable, that may pertain to the failure of [Plaintiff] to comply with any of the requirements of this Consent Order including, without limitation, the assessment of penalties . . . . The Consent Order *shall not be construed as a covenant not to sue*, release, wavier, or limitation of any rights, remedies, powers and/or authorities, civil

or criminal . . . with respect to the failure of [Plaintiff] to comply with this Consent Order.

*Id.* § 18.3 (emphasis added).

Not only is it clear the consent order did not completely extinguish Defendant's liability, but Defendant, a non-party to the consent order, is entirely outside the scope of it. Additionally, the possibility of the future insolvency of Plaintiff and the resulting inability to fulfill its obligations under the consent order certainly leaves open the possibility that the DEQ could seek additional remedies from Defendant.

Defendant is entitled to summary judgment on Count IV of Plaintiff's First Amended Complaint.

B) Count V: Common Law Indemnity

A claim for common law indemnity under Michigan law is available when:

(1) liability has been imposed on a party by reason of its relationship to a tortfeasor;

(2) liability is imposed by operation of law;

(3) *a party is free from personal fault or causal negligence*; or

(4) *a party is merely guilty of 'passive' negligence.*

*In re Air Crash at Detroit Metro. Airport*, 791 F. Supp. 1204, 1236 (E.D. Mich. 1992) (emphasis added) (citing *Hardy v. Monsanto Enviro-Chem Systems, Inc.*, 323 N.W.2d 270 (1982)). The Court considered and decided the issue of Plaintiff's active fault in its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. Based on motion submissions, Plaintiff's active fault is still a contested issue of material fact that precludes summary judgment.

There is one new argument raised by Defendant. Defendant now says that "established Michigan law provides that a party is not entitled to indemnity if it was not, in fact liable for the judgment in the underlying action." *Proctor & Schwartz, Inc. v. United States Equip. Co.*, 624 F.2d 771, 775 (6th Cir. 1980). In cases where there has been settlement, "indemnity will not be in favor of a party that pays a judgment or settles a lawsuit unnecessarily. Thus, [it] must prove it was, in fact, liable . . . ." *Id.* at 776. Plaintiff does not respond to this argument.

The argument raises a difficult contradiction. To succeed on its claim for common law indemnity, Plaintiff must prove it is free from personal fault or causal negligence, or instead show it is merely guilty of passive negligence. *Detroit Metro*, 791 F. Supp. at 1236. However, Plaintiff must also prove it is actually liable, regardless of any actual payments or relief offered. There are, of course, cases in which parties pay settlements for on which they are not legally liable simply to avoid the costs and frustrations of litigation. Thus, there is the requirement that "indemnity will not be in favor of a party that pays a judgment or settles a lawsuit unnecessarily." *Proctor*, 624 F.2d at 776.

The question of Plaintiff's *liability* is also distinct from whether it is "free from personal fault or causal negligence" or "merely guilty of 'passive' negligence." *Detroit Metro*, 791 F. Supp. at 1236 (citing *Monsanto*, 323 N.W.2d 270). For instance, a party is sometimes "vicariously liable to another through no fault of his own." *Cutter v. Massey Inc.*, 318 N.W.2d 554, 556 (Mich. Ct. App. 1982).

Liability is a contested material fact, and once the moving party carries its burden, the burden shifts to the nonmoving party to *set forth specific facts showing a*

15

*genuine triable issue*. *Chao v. Hall Holding Co.*, 285 F.3d at 424. Plaintiff fails to assert it is liable at any point in this litigation, and thus, it cannot maintain a claim of common law indemnity after settlement.

Plaintiff's claim is also foreclosed because the "potential liability exception" described in *Detroit Metro* is unavailable. This exception only applies to claims of contractual indemnity. *See Polec v. Northwest Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 549 n.30 (6th Cir. 1996) ("McDonnell Douglas argues that in certain circumstances indemnity may be based on 'potential liability' as opposed to actual liability on the underlying obligation. However, this exception to the general rule we apply today has only been extended to disputes based on contractual indemnity (which is governed by statute), as opposed to the common law indemnity sought here.") (internal citations omitted) (citing *Detroit Metro*, 791 F. Supp. at 1237).

## VI. CONCLUSION

Defendant's Motion for Summary Judgment on its Counterclaim is **DENIED**. Defendant's Motion for Summary Judgment on Counts IV and V of Plaintiff's First Amended Complaint is **GRANTED**. Trial will proceed on January 29, 2008.

**IT IS ORDERED**.

                                                 /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: November 28, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on

November 28, 2007

  S/Carol A. Pinegar
Deputy Clerk