**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**WACKER CHEMICAL CORPORATION,**

    **Plaintiff,**

vs.                                                        Case No: 05-72207
                                                                                          Honorable Victoria A. Roberts

**BAYER CROPSCIENCE INC.,**

    **Defendant.**

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S NOVEMBER 28, 2007 ORDER

**I.    INTRODUCTION**

Before the Court is Defendant's Motion for Reconsideration of the Court's November 28, 2007 Order, where it denied Defendant's Motion for Summary Judgment on its Counterclaim. The Court held oral argument on January 23, 2008. For the following reasons the Court **DENIES** the motion.

**II.    BACKGROUND**

Confusion regarding the corporate separateness of Siltronic (Old Wacker) and Plaintiff contributed to an incorrectly reasoned earlier ruling. This confusion arose from: (1) formation of the arguments in both parties' briefs; (2) complicated corporate history of the involved corporate entities; (3) previous confusion over real parties in interest and resulting assignment; and (4) ongoing confusion of the parties regarding Plaintiff's relationship with Siltronic. The Court will not rehash these issues. However, going

1

forward, it urges the parties to speak with greater clarity about the corporate forms relevant to this case.

## III. STANDARD

Eastern District of Michigan Local Rule 7.1(g)(3) provides for reconsideration if the movant demonstrates a palpable defect by which the court and the parties have been misled, and further demonstrates that correcting the defect will result in a different disposition of the case. "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). The Court may in its discretion grant motions for reconsideration that present the same issues. L.R. 7.1(g)(3). Defendant does not raise new issues, but the Court reconsiders its arguments in light of the clarity now, concerning corporate identities. Also, the Court now considers Plaintiff's arguments which it did not reach in its previous order.

## IV. ANALYSIS

A. <u>Assignment</u>

Plaintiff was a joint venture owned by Siltronic and Defendant between 1974 and 1987. Plaintiff and Siltronic are now wholly owed subsidiaries of the same parent company. The Court now holds that the assignment of Siltronic's rights and obligations to Plaintiff on March 23, 2007 does not defeat Defendant's Indemnification Agreement with Siltronic, so Defendant's counterclaim does not fail on this ground as the Court concluded in its November 28th order. However, Defendant's motion for summary judgment is still denied because the Indemnity Agreement does not cover Plaintiff's

2

claim for direct operator liability against Defendant.  In addition, the Court clarifies that this is, indeed, a third party claim Plaintiff brings against Defendant.

B.      Third Party Status of Plaintiff's Claim

The Court's November 28, 2007 order did not consider Plaintiff's argument that under *Sequa Corp. v. Gelmin,* its corporate affiliation with Siltronic did not permit Defendant to invoke Siltronic's indemnification obligation.  *Sequa Corp. v. Gelmin*, 851 F. Supp. 106 (S.D.N.Y. 1994).

Although *Sequa* arguably supports Plaintiff's argument, the Court is persuaded that *Sequa's* holding regarding the effect of corporate affiliations on claims for indemnification is distinguishable.

In *Sequa*, both Plaintiff and its parent company brought a claim against several defendants.  One defendant argued that because the plaintiff was obligated to indemnify it, Plaintiff's claim was foreclosed.  Plaintiff, a party to the indemnification agreement, countered that absent an unequivocal indication to the contrary, indemnification agreements applied only to claims brought by third parties.  The Court agreed with Plaintiff and held there was no such "unequivocal" indication.  Defendant responded that although Plaintiff was a party to the indemnification agreement, Plaintiff's parent company was a third party, and Plaintiff was required to indemnify Defendant from the suit brought by its parent company in the same action brought by Plaintiff.  The Court rejected this argument:

> Defendants would have the Court read that provision as unmistakably revealing an intent for [the subsidiary] to indemnify defendants when [a subsidiary]-related entity brings a claim against defendants. The effect of such an interpretation, however, would be to convert the agreement into a release--if [the parent] sued defendants and prevailed, defendants could

3

> seek indemnification from [the parent's] subsidiary for any resulting liability and expenses. Such an intent is not unmistakably clear.

*Sequa*, 851 F. Supp. at 111.

Despite *Sequa's* broad language there are several important distinctions between *Sequa* and this case. In *Sequa*: (1) the indemnitor was a plaintiff with a claim against Defendant; and (2) the subsidiary's (the indemnitor's) corporate parent also had a claim in the same suit against Defendant. Here: (1) Plaintiff does not have an indemnity obligation to Defendant; (2) the indemnitor (Siltronic) is not a party with a claim against Defendant; and (3) Plaintiff and Siltronic (the indemnitor) are related only as subsidiaries of the same corporate parent.

Despite the breadth of *Sequa's* holding, the Court is not willing to extend its application to such a different set of corporate relationships. *Sequa* has been heavily cited as a leading New York case on the need for an unequivocal indication that an indemnification agreement applies to claims between the parties. However, *Sequa's* additional holding regarding corporate affiliations has never been cited by a Court interpreting New York law. Tellingly, *Sequa* looks to support for this aspect of its holding on a Ninth Circuit case interpreting California law. *See Layman v. Combs,* 981 F.2d 1093, 1099 n.2 (9th Cir. 1992).

Indeed, the proposition of *Sequa* on which this Plaintiff relies cuts against contrary New York case law. Generally, "in the absence of a clear indication of dominion and control, parent, subsidiary or affiliated corporations are treated separately and independently for purposes of assigning legal responsibility." *Resorts International of New yrok, Inc.* 553 N.Y.S.2d 342 (N.Y. App. Div. 1990);

*Meshel v. Resorts Int'l of New York, Inc.*, 160 A.D.2d 211, 213 (N.Y. App. Div. 1990) (citing *Alexander & Alexander v Fritzen*, 114 A.D.2d 814, 815 (N.Y. App. Div. 1985), *affd,* 68 N.Y.2d 968 (1986)); *see also Mobil Oil Corp. v. Wellpoint Dewatering Corp.*, 110 A.D.2d 1085, 1086 (N.Y. App. Div. 1985). Plaintiff does not assert that either it or Siltronic exercises dominion or control over the other.

The Court declines to follow *Sequa*. Plaintiff's claim is, indeed, a third party claim for purposes of this case.

D.      Director Operator Liability

Because the Court previously found the assignment issue dispositive, it did not consider Plaintiff's argument that the indemnity agreement does not apply because Plaintiff's claim is for direct operator liability under the Michigan Natural Resources and Environmental Protection Act ("NREPA"), M.C.L. §§ 324.20126a, 20129(8). In *Schiavone v. Pearce*, the Second Circuit held that under New York law an agreement that covered claims "on a cause of action arising out of or attributable to the operations or activities of [a subsidiary] . . . [and] any and all loss or expense . . . sustain[ed] or incur[red] by reason of any such liability or obligation . . . ." did not cover the direct operator liability of that subsidiary's parent. *Schiavone v. Pearce*, 79 F.3d 248, 250 (2d Cir. 1996).

Although the facts are somewhat different *Schiavone* makes clear an indemnification or liability transfer agreement that speaks only of subsidiary

5

liability, is not intended to indemnify a parent against its own direct operator liability.

Like the language in *Schiavone*, this indemnity agreement mentions damages relating to "polluting air, water or soil in violation of any Federal, State or local statute" only in relation to Plaintiff (the former joint venture subsidiary). Indemnity Agreement § 12.3(iii). While Defendant notes, and it is true, that NREPA does not bar an agreement to indemnify for liability, NREPA cannot make a contract broader than its terms. The indemnification Defendant enjoys under its Indemnification Agreement with Siltronic is limited by its terms to Plaintiff's own liabilities and does not include Defendant's direct operator liability.

To the extent Plaintiff is successful on its claim for Defendant's direct operator liability, Defendant cannot seek indemnification for any damage it is held responsible for.

## V. CONCLUSION

The Court **DENIES** Defendant's Motion for Reconsideration. Although Defendant's argument contesting the reasoning of the November 28, 2007 Order was correct, the outcome is unchanged because the Indemnification Agreement does not apply to claims for direct operator liability under NREPA.

**IT IS ORDERED**.

                                                /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: January 24, 2008

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 24, 2008.<br><br>s/Linda Vertriest<br>Deputy Clerk |
|---|